David BURNS, et al., Appellants,

v.

BLACK & VEATCH ARCHITECTS, INC., et al., Respondents.

No. WD 45983.

Missouri Court of Appeals, Western District.

March 9, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 1993.

Application to Transfer Denied June 29, 1993.

Don Witt, Platte City, for appellants.

Mark E. Johnson, Elizabeth D. Badger, Christopher D. Schneider, Kansas City, for respondent Black & Veatch Architects, Inc.

Vincent F. O'Flaherty, Kristin L. Altice, Kansas City, for K.C. Testing Lab.

Jerome V. Bales, Steven K. Coffin, Kansas City, for respondents.

Before LOWENSTEIN, C.J., and BERREY and BRECKENRIDGE, JJ.

BERREY, Judge.

David and Alice Burns, appellants herein, filed this action for injuries David received when a trench in which he was working collapsed on him. The original defendants were Black & Veatch Architects, Inc.; School District of North Kansas City; Beutler, Inc. d/b/a George J. Shaw Construction; Kansas City Testing Laboratory, Inc.; and Quamrul Khan. Plaintiffs voluntarily dismissed without prejudice all claims against School District of North Kansas City ("School District") and Quamrul Khan and they are not parties to this appeal. Black & Veatch Architects, Inc. ("Black & Veatch"), Beutler, Inc. d/b/a George J. Shaw Construction ("Shaw Con-

struction"), and Kansas City Testing Laboratory, Inc. ("KCTL"), the three remaining defendants, all filed motions for summary judgment which were granted by the trial court. Appellants appeal the granting of summary judgment in favor of all three remaining defendants. We affirm.

In August 1988, Black & Veatch and the School District entered into a contract by which Black & Veatch agreed to perform architectural services for an addition to the Clardy Elementary School. Black & Veatch prepared plans and specifications for the addition. In October 1988, upon recommendation of Black & Veatch, the School District hired KCTL to perform geotechnical services for the project. KCTL performed such services and prepared its site investigation report in 1988.

In March 1989, the School District entered into a contract with Hastings Construction Company ("Hastings") to be the general contractor on the project. Appellant David Burns was an employee of Hastings. Hastings subcontracted with Shaw Construction to perform the excavation portion of the work. The School District also retained KCTL to perform materials testing and special inspection services required by the City of Kansas City, Missouri.

On August 8, 1989, in order to construct a foundation as part of the project, Hastings requested Shaw Construction to excavate two parallel trenches leaving an island of dirt approximately 18 to 24 inches wide between the trenches. The excavated trenches resembled a "U" shape. A wooden bulkhead was placed at the open end of the excavation to allow the concrete to be poured one side at a time. The day after the trenches were excavated, concrete was poured into one side of the excavation. Appellant David Burns was instructed to observe the bulkhead during the pour to assure that it did not move or give way. In order to observe the bulkhead, Burns stepped into the trench that was parallel to the one in which the concrete was being poured. The trenches were approximately three to four feet deep and had not been shored or braced. While the concrete was

being poured, the dirt bank separating the two trenches gave way injuring Burns.

On June 11, 1990, appellants filed their amended petition alleging numerous acts of negligence and breach of contract with the School District against all respondents. On October 9, 1991, Black & Veatch filed a motion for summary judgment, which was granted on November 19, 1991. On November 18, 1991, Shaw Construction filed its motion for summary judgment, which was granted on December 17, 1991. On January 8, 1992, KCTL filed its motion for summary judgment, which was granted on January 29, 1992. Appellants' motions to reconsider were denied and this appeal followed. ·

### I.

■ When determining the appropriateness of summary judgment, this court reviews the entire record in the light most favorable to the party against whom summary judgment was entered. *Atlanta Casualty Co. v. Stephens*, 825 S.W.2d 330, 332 (Mo.App.1992). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 74.-04(c). It is the movant's burden to show that no genuine issue of material fact exists that would bar granting of the judgment. *Earl v. State Farm Mut. Auto. Ins. Co.*, 820 S.W.2d 623, 624 (Mo.App.1991).

■ Many of the issues raised herein concern contract construction. Construction of a contract is usually a matter of law. Therefore, in contract cases, summary judgment is proper when the meaning of that portion of the contract in issue is so clear that it may be determined from the four corners of the contract. *Schelle v. Mercantile Bancorporation, Inc.*, 741 S.W.2d 720, 724 (Mo.App.1987).

■ In addition to the contract allegations, appellants also allege negligence of the respondents. In any negligence action, the plaintiff must first establish that a

duty exists by the defendant to protect the plaintiff from the injury suffered. Plaintiff must then establish that the defendant failed to perform the duty and that failure was the proximate cause of plaintiff's injury. *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo. banc 1990). Duty is a matter of law to be determined by the court. *Ackerman v. Lerwick*, 676 S.W.2d 318, 321 (Mo.App.1984). Duty cannot be established by expert opinion of proper procedure. Expert opinion testimony deals only with whether there was a breach of a legally existing duty. *Id.*

With these principles of law in mind, we consider the trial court's granting of summary judgment to each of the defendants, respondents herein, giving due regard to the role played by each in the performance of the construction contract.

## II.

Appellants' Point I alleges three points of error concerning the trial court's granting of summary judgment in favor of respondent Black & Veatch. Appellants first argue that Black & Veatch did specify means and methods for the protection of workers during excavation on the project. Therefore, under the terms of the contract between Black & Veatch and the School District, Black & Veatch was responsible for such means and methods and failed to assume that responsibility. Appellants refer to paragraph 2.6.6 of the contract, which states in pertinent part:

> The Architect shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's responsibility under the Contract for Construction *unless such means or methods have been specified by Architect for the performance of the Work.*

(emphasis added).

The underlined portion was added to the standard form of agreement by the parties.

Appellants argue that Black & Veatch did specify means and methods in its Pro-

ject Manual. Uncontroverted testimony establishes that the Project Manual was forwarded, with the proposed drawings, to all prospective contractors providing them sufficient information to prepare their bids. The paragraphs appellants aver constitute specification of means and methods are found in the section of the Project Manual titled "Excavation, Backfill, and Grading," as follows:

> (1) Protect excavations by shoring, bracing, sheet piling, underpinning, or other methods, as required to prevent cave-ins or loose dirt from falling into excavation.
>
> (2) Excavate sub-soil in accordance with lines and levels required for construction of the work, including space for forms, bracing and shoring, and to permit inspection.
>
> (3) Do additional excavation only by written authorization of Architect.
>
> (4) Where temporary unbalanced pressures are liable to develop on walls, erect necessary shoring to counteract imbalance. Leave in place until floor slabs are placed.

Assuming all these paragraphs are relevant to the situation giving rise to Mr. Burns' injuries, this court is not persuaded the language cited constitutes specifying means and methods.

Paragraph 3.3.1. of the General Conditions of the Contract for Construction between Hastings and the School District provides:

> The Contractor [Hastings] shall supervise and direct the Work using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless Contract Documents give other specific instructions concerning these matters.

Additionally, paragraph 10.1.1 provides, "Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract." Finally, paragraph 10.2.1 provides, "Contrac-

tor shall take reasonable precautions for safety of, and shall provide protection to prevent damage, injury or loss to: (1) employees on the Work and other persons who may be affected thereby...."

The conditions contained in the Project Manual are general conditions, instructing the contractor, in this case Hastings, to provide shoring, bracing, etc. where needed. They do not constitute specific means and methods. The uncontroverted testimony of Steve Neal, Hastings' Superintendent, establishes that the specifications provided by Black & Veatch do not specify means and methods of excavating or protecting the trench in which Burns was injured. The method used by Hastings was one way to construct the foundation. The evidence disclosed that other methods were available to Hastings.

Missouri courts have not addressed the exact issue of whether an architect has mandated means and methods if the contractor is free to choose between two or more methods of performing work. We agree, however, with the reasoning of the Montana Supreme Court in its interpretation of a similar provision.

> The plans and specifications also provided for shoring where necessary. From that it is clear to this Court that there were provisions in the plans and specifications that safety precautions should be taken to assure the safety of the employees working on the project. Those provisions in the contract mean that it was the duty of the contractor to take all necessary safety precautions.

*Wells v. Stanley J. Thill & Assoc., Inc.*, 153 Mont. 28, 452 P.2d 1015, 1018 (Mont. 1969).

Appellants' expert witness, George Bradberry, while acknowledging that he has no formal education beyond high school and that he does not consider himself an expert in the field of architecture or structural engineering, testified that, in his opinion, Black & Veatch should have prepared drawings of a trench protection system. In other words, he believes Black & Veatch should have provided means and methods even though he agrees that the contract

does not require Black & Veatch to perform that function.

Mr. Bradberry did agree "that the generally accepted practice in the construction industry is that architects and engineers do not provide trench shoring [plans]" because to do so would infringe on the contractor's right to establish means and methods of construction. He also agreed that

> Under the generally-accepted terms and practices in the construction industry, the excavation of a trench or the manner in which it's excavated, the sequence in which it's excavated or whether or not it is protected is considered at present a means and methods of construction....

He further agreed that it is not a "generally-accepted practice in the construction industry for an architect to tell a contractor how to make an excavation."

Appellants argue that the statutes concerning certification of architects and engineers contained in Chapter 327, RSMo 1986, create a duty on the part of Black & Veatch to protect David Burns from his injuries. As authority for this assertion, appellants cite this court to *Duncan v. Missouri Bd. for Architects, Professional Eng'rs & Land Surveyors*, 744 S.W.2d 524 (Mo.App.1988). The same argument was raised and rejected by this court in *Gipson v. Slagle*, 820 S.W.2d 595 (Mo.App.1991). The primary goal promoted by Chapter 327 is regulation of architects and engineers by their licensing, registration and discipline. The purpose is to protect those who contract for the services of an architect or engineer, not to protect the general public as a whole. *Id.* at 597. Additionally, architects are under no duty to supervise construction unless they expressly agree to do so. *Brown v. Gamble Constr. Co.*, 537 S.W.2d 685, 687 (Mo.App. 1976).

We find no basis for appellants' contention that Black & Veatch specified the means and methods in this instance. Therefore, it follows that, pursuant to contract, Black & Veatch owed no duty to protect David Burns from the injuries he sustained because of the collapse of the

earth into the trench. Appellants' first argument against Black & Veatch is denied.

In their second argument against Black & Veatch, appellants allege that Black & Veatch knew or should have known that the soil at the excavation was unstable and that the trenches Black & Veatch designed coupled with the soil conditions created a dangerous condition without shoring, bracing, or other protection. As stated above, the duty to determine where shoring was necessary and to provide such necessary shoring was the contractor's.

As to the soil conditions, Black & Veatch provided in the Project Manual as follows:

Geotechnical information was obtained for use in preparing foundations design, but Contractor may draw his own conclusions therefrom. No responsibility is assumed by the Owner or Architect for sub-soil conditions other than at the locations, and at the time, the explorations were made.... Bidders are expected to examine the site and decide for themselves the character of material to be encountered.

Appellants attempt to persuade this court to follow the holding of the Kansas Supreme Court in *Balagna v. Shawnee County*, 233 Kan. 1068, 668 P.2d 157 (1983). In *Balagna*, the inspector for the engineers had actual knowledge that the trenching operation was being carried out in violation of OSHA standards. *Id.* at 164. The Kansas Supreme Court held that having actual knowledge that prescribed safety precautions were not being followed created a duty in the engineers to take action to prevent injury. In the instant action, there are no allegations that OSHA standards were not being observed. There are also no allegations that a representative of Black & Veatch inspected the excavation. The allegation is, rather, that had the representative performed an inspection, he could have taken precautions to protect the trenches from collapse. This allegation is addressed below. Not only is *Balagna* not binding on this court, it is not in point.

In reaching its holding in *Balagna*, the Kansas court cited an earlier Kansas case that discussed duty and responsibilities of an architect engineer. *Id.* 668 P.2d at 163 (citing *Hanna v. Huer, Johns, Neel, Rivers & Webb*, 233 Kan. 206, 662 P.2d 243 (1983)).

In *Hanna*, the opinion of the court reviews the applicable law from various jurisdictions and concludes that the great weight of authority supports the rule that an architect does not, by reason of his supervisory authority over construction, assume responsibility for the day-to-day methods utilized by the contractor to complete the construction. The architect's basic duty is to see that his employer gets a finished product which is structurally sound and which conforms to the specifications and standards. *Balagna*, 668 P.2d at 163. If not for the actual knowledge of the engineer that an OSHA requirement was not being observed, the engineers in *Balagna* would have had no duty to the appellant.

■ In their third argument against Black & Veatch, appellants allege that Black & Veatch failed to inspect the construction site as required by its contract with the School District. This contract provision creates a duty on the part of Black & Veatch in favor of the School District to assure the finished product is structurally sound and conforms to the specifications. *Id. See also, Wells*, 452 P.2d at 1018. The contract provision does not create a duty for Black & Veatch to protect workers on the job.

In their arguments, appellants urge this court to consider the affidavit of Wayne W. Williams, professional engineer. This affidavit was submitted to the trial court on January 6, 1992, with appellants' motion to reconsider summary judgment entered in favor of Black & Veatch, which summary judgment motion was granted by the trial court on November 19, 1991. The affidavit was not part of the record before the trial court. "The filing of such post-submission affidavits clearly is not in compliance with the requirement of Rule 74.04(c) and has no effect upon the propriety of the trial court's grant of summary judgment." *Landmark N. County Bank & Trust Co. v. National Cable Training Centers, Inc.*, 738 S.W.2d 886, 890 (Mo.App.1987). Ac-

cordingly, we do not consider Mr. Williams' affidavit in our review of appellants' appeal as to Black & Veatch.

Appellants' Point I concerning respondent Black & Veatch is denied. Summary judgment in favor of Black & Veatch and against appellants is affirmed.

### III.

In their second point on appeal, appellants argue that the trial court erred in granting summary judgment in favor of KCTL. In appellants' amended petition, they alleged negligence and breach of contract against KCTL. Any contract claim appellants could have against KCTL would be as third party beneficiaries to the contract entered into between KCTL and the School District.

> Third party beneficiaries include those to whom the law gives a right to maintain a cause of action for breach of contract even though they never became privy to a contract nor to its consideration. Only those third parties for whose primary benefit the contracting parties intended to make the contract may maintain an action. Although the contract need not name the third party beneficiary, the terms of the contract must directly and clearly express an intent to benefit an identifiable person or class.

*Ernst v. Ford Motor Co.*, 813 S.W.2d 910, 922 (Mo.App.1991) (citations omitted). "In order to be designated a 'third party beneficiary' who would be owed contractual duties, the contract terms must 'clearly express' an intent to either benefit that party or an identifiable class of which the party is a member." *State ex rel. William Ranni Assoc., Inc. v. Hartenbach*, 742 S.W.2d 134, 140 (Mo. banc 1987). Absence of such express declaration gives rise to a strong presumption that parties contract only for themselves and not for the benefit of others. *Id.* at 141.

Nothing in this action indicates any intent by the parties to the contract, KCTL and the School District, that David Burns, or any employees who worked on the job,

benefit from that contract. Appellants breach of contract arguments fail.

The only case cited by appellants as supportive of their cause against KCTL is *Chubb Group of Ins, Cos. v. C.F. Murphy & Assoc., Inc.*, 656 S.W.2d 766 (Mo.App. 1983). In *Chubb*, the issue was whether plaintiffs stated a claim upon which relief could be granted. Plaintiffs were lessees of an arena designed for presentation of entertainment events. This court found "that architects and contractors owe a duty to exercise the care required of their professions to persons with whom they are not in privity when the injury to those third parties is foreseeable" and that injury to parties presenting entertainment should have been foreseeable as a likely result of defendants' negligent performance of their duty to design and build a safe structure. *Id.* at 775. KCTL neither designed nor "built" the trench in which David Burns was injured.

In its discussion of foreseeability, this court in *Chubb* explained as follows: "where one under contract with another assumes responsibility for property or instrumentalities and agrees under his contract to do certain things ... which, if left undone, would likely injure third persons, 'there seems to be no good reason why [he] should not be held liable to third persons injured thereby ...'" *Id.* at 774 (quoting *Westerhold v. Carroll*, 419 S.W.2d 73, 80 (Mo.1976)). It was the general contractor Hastings, not KCTL, that assumed responsibility for the premises and the means and methods of the trenching operation. Also, Hastings, not KCTL, agreed to protect the workers on the job. Therefore, *Chubb* is inapposite to the instant action.

It is difficult to separate appellants' breach of contract arguments from their negligence arguments and it appears that all arguments center around the existence of a contract between KCTL and the School District. We will, however, briefly address the negligence allegation. Appellants' expert witnesses opine that KCTL should have realized the danger of trench collapse and made recommendations to pro-

tect Mr. Burns. Realization of the possibility that a dangerous situation may be created is certainly not, on its own, a basis for a negligence action.

> The elements in an action for negligence are the existence of a duty on the part of the defendant to protect the plaintiff from injury, the failure of the defendant to perform that duty and resulting injury to the plaintiff proximately caused by defendant's failure to perform the duty.

*Harris v. Kansas City,* 759 S.W.2d 236, 237 (Mo.App.1988). "Actionable negligence requires a causal connection between the conduct of the defendant and the resulting injury to the plaintiff." *Schaffer v. Bess,* 822 S.W.2d 871, 876 (Mo.App.1991). If David Burns had not been in the trench, either of his own accord or under direction of his supervisor, he would not have sustained injury when the trench collapsed. David Burns testified that at the time of the accident he knew trenches were dangerous. In fact, at the time of his deposition, he believed trenches to be "inherently dangerous."

As noted above, it is quite clear that Hastings, in its contract with the School District, assumed responsibility for project supervision and safety precautions. KCTL is, therefore, relieved of any such duty. *See Brown v. Gamble Constr. Co.,* 537 S.W.2d 685, 687 (Mo.App.1976). We find the instant action against KCTL is controlled by *Mino v. Porter Roofing Co.,* 785 S.W.2d 558 (Mo.App.1990). *Mino* states,

> The contractor is liable where he is in control of and has charge of the work and the dangerous condition is attributable to wrongful or negligent acts of his employees while the work is in progress.

*Id.* at 561. It is undisputed that Hastings was in control. KCTL had no right to control the actions of David Burns or any other Hastings' employee. KCTL did not have a duty to protect David Burn from this injury nor were actions of KCTL the cause of the injuries he sustained.

Appellants' Point II is denied.

## IV.

In their third point on appeal, appellants argue that the trial court erred in granting summary judgment in favor of Shaw Construction. In their amended petition, appellants raise allegations of negligence against Shaw Construction. Appellants do not allege breach of contract as a cause of action against Shaw Construction. During the course of this action, Hastings, the general contractor and David Burns's employer, was impleaded into the action by third party plaintiffs Black & Veatch and KCTL. Hastings then filed a cross-claim against Shaw Construction alleging only that if Hastings is found liable to any third party plaintiff, Hastings is entitled to be indemnified and held harmless by Shaw Construction pursuant to a written contract allegedly entered into between Shaw Construction and Hastings.

On appeal, appellants attempt to ride the coattails of Hastings' cross-claim in arguing that whether a contract exists between Hastings and Shaw Construction is a material issue of fact that defeats summary judgment. In order to determine the cause of action pleaded in a petition, this court must read the petition "from its four corners" and in its entirety. We must give the language its plain and ordinary meaning and interpret it as it fairly appears to have been intended by the pleader. *Maddox v. Truman Medical Center, Inc.,* 727 S.W.2d 152, 153 (Mo.App. 1987). Reading appellants' amended petition in its entirety, it is evident that they do not plead breach of contract against Shaw Construction, nor do they adopt by reference any allegations contained in Hastings' cross-claim.

Section 507.080, RSMo 1986, addresses third-party claims and the defenses that may be asserted by certain parties. "The plaintiff may amend his pleadings to assert against the third-party defendant any claim which the plaintiff might have asserted against the third-party defendant had he been joined originally as a defendant." *Id.* The Missouri Supreme Court has held:

[a] plaintiff cannot have a judgment against the third-party defendant until and unless by amendment of his petition he has asserted a "claim" against him by the statement of a cause of action against such third-party defendant.... *State ex rel. McClure v. Dinwiddie*, 358 Mo. 15, 213 S.W.2d 127 (Banc 1948) *overruled on other grounds by Missouri Pac. R.R. v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978). Although Shaw Construction is not a third-party defendant, the analogy follows that if a plaintiff cannot rely upon claims and assertions of his defendant against a third-party defendant unless he has incorporated those allegations into his own pleading, a plaintiff also cannot rely upon claims and assertions of the third-party defendant against an original defendant unless and until, by amendment of his petition, the plaintiff asserts the claims himself. "It is hornbook law that a party cannot recover for a cause of action not pleaded." *Browning–Ferris Indus. of St. Louis, Inc. v. Landmark Systems, Inc.*, 822 S.W.2d 569, 571 (Mo.App.1992).

Additionally, a "plaintiff cannot rely on pleadings of ultimate fact when confronted with a Motion for Summary Judgment." *Wingo v. Eagle Realty Co.*, 726 S.W.2d 805, 807 (Mo.App.1987).

A party confronted by a proper motion for summary judgment may not rest upon mere allegations or denials in his pleadings but must, in order to overcome the motion, by affidavits or otherwise, set forth specific facts showing a genuine issue for trial.

*St. Charles County v. Dardenne Realty Co.*, 771 S.W.2d 828, 830 (Mo. banc 1989). Appellants fail to meet this requirement. This court was provided no affidavits or references to sworn testimony setting forth specific facts that show a genuine issue of fact exists. This point is dispositive of appellants' arguments against Shaw Construction. Accordingly, appellants' Point III is denied.

## V.

Alice Burns's right to recover for loss of consortium is derivative of David's right to recover.

Missouri has consistently followed the well-established rule that plaintiff's right to recover for loss of consortium of his spouse is derivative only, so that if the spouse has no valid claim for personal injuries, plaintiff cannot recover special damages flowing there-from.

*Teschner v. Physicians Radiology*, 761 S.W.2d 665, 667 (Mo.App.1988). Because we hold that David Burns has no valid claim for personal injuries against the respondents herein, Alice Burns also has no valid claim.

The judgment of the trial court as to both David and Alice Burns is affirmed.

All concur.