Nancy Gail McANINCH, individually and as next friend for Kelly Jo Brown McAninch, Amber Taneen McAninch, and William Glenn McAninch, III, Plaintiffs–Appellants,

v.

B. Glenn ROBINSON, et al., Defendants,

and

Brent A. Butler, Defendant–Respondent.

No. 21000.

Missouri Court of Appeals, Southern District, Division One.

April 14, 1997.

---

David W. Hall, Jr., Richard L. Rollings, Jr., Bussell, O'Neal & Hall, L.L.P., Springfield, for plaintiffs-appellants.

Gary W. Allman, Cantwell, Allman, Smith & Trokey, L.L.P., Branson, for defendant-respondent.

Before BARNEY, P.J., and PREWITT and GARRISON, JJ.

PER CURIAM.

Plaintiffs filed a wrongful death suit against Defendant Brent A. Butler (Butler) arising from the death of William McAninch II, their husband and father. On this appeal, they challenge a summary judgment entered in Butler's favor. We affirm.

Mr. McAninch's death resulted from the collapse of a trench in which he was working at a construction site in Branson, Missouri. The trench had been dug to accommodate a sewer line connecting the motel being built to the city's sewer system. The motel had been designed by Butler, an architect, pursuant to an agreement with the property owner.

Plaintiffs alleged that Butler prepared the plans and specifications of the motel, and was the architect in charge of: construction of the motel; the manner and methods of the compaction of fill dirt used on the motel property; solving the settling and sinking problems of the motel building;[1] designing and establishing specifications for the safe and proper methods of trench digging on the

---

1. Fill dirt, which had been previously placed on the building site, had been removed and replaced with compacted fill dirt prior to construction.

During construction, however, it was discovered that a masonry wall of the motel had cracked as a result of the movement of some of the fill dirt.

project; designing the plumbing systems, including the sewer main; designing the location of the sewer main hookup line where it exited the building, including its depth; notifying and warning Mr. McAninch and others of the danger of working in a trench with sides not "laid back," braced or shored to prevent cave-ins; and requiring the use of safe methods in constructing the trench, including sloping, shoring, and bracing its walls.

Butler was alleged to have been negligent in failing to: require the use of proper fill dirt on the project; require the use of proper compaction techniques for the fill dirt used; select a more practical and safer method for solving the sinking and settling problems of the motel; design the exit of the sewer main line from the building at such a depth that it would not require a trench ten or eleven feet deep in order to hook the sewer to the main line; supervise and inspect the construction project and the installation of the sewer line; discover that the trench was not properly shored, braced or sloped; make the area of the sewer line installation reasonably safe; select a construction site that did not require fill dirt; require the use of competent supervisors and proper safety measures in digging the trench; require the use of a competent contractor knowledgeable in the use of proper safety measures; require proper compaction tests of the fill dirt; and stop the construction after learning of the proper compaction tests on the fill dirt areas.

Butler's motion for summary judgment, which incorporated his affidavit and his contract with the owner, was based on the contention that he had no legal duty to Mr. McAninch. It was sustained following Plaintiffs' response, which consisted of denials, references to deposition testimony and supporting suggestions.

In considering an appeal from the entry of a summary judgment, an appellate court reviews the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The review is essentially *de novo* with the appellate court employing the same tests as should be employed by the trial court in deciding whether to grant the motion. *Id.* The propriety of a summary judgment is purely an issue of law. *Id.*

In their first point on appeal, Plaintiffs contend that the trial court erred in entering the summary judgment because the motion was defective by not stating with particularity the grounds upon which it was based, as required by Rule 74.04,[2] and further that the trial court entered the summary judgment on a basis which was not alleged in the motion.

Plaintiffs cite *Finley v. St. John's Mercy Med. Ctr.,* 903 S.W.2d 670, 672 (Mo.App. E.D.1995), and *Miller v. Ernst & Young,* 892 S.W.2d 387, 389 (Mo.App. E.D.1995), for the proposition that the purpose of the requirement of specificity contained in Rule 74.04(c) is to apprise the opposing party, the trial court and the appellate court of the specific basis on which the moving party claims entitlement to a summary judgment. Plaintiffs do not demonstrate how they contend that Butler's motion was procedurally defective under Rule 74.04(c), other than the general statement that the motion "did not state with particularity the grounds on which he claimed entitlement to Summary Judgment and did not even specifically incorporate any suggestions of law in support of the motion."

■ Our review of the motion indicates that it alleged the extent of Butler's obligations under his agreement with the owner; that his duties under the agreement did not include those which Plaintiffs alleged that he performed negligently; and that consequently he had no duty to Mr. McAninch. The motion also incorporated documents such as

---

2. Rule 74.04(c)(1), Missouri Rules of Civil Procedure (1996), provides:

Motions for summary judgment shall state with particularity in separately numbered paragraphs each material fact as to which the movant claims there is no genuine issue, with specific references to the pleadings, discovery or affidavits that demonstrate the lack of a genuine issue as to such facts. Each motion for summary judgment shall have attached thereto a separate legal memorandum explaining why summary judgment should be granted and affidavits not previously filed that are relied on in the motion.

Butler's affidavit and his agreement with the owner. While Butler's motion did not mention supporting suggestions, he filed suggestions in support and served them on opposing counsel.

We also note that Plaintiffs did not object to the motion for summary judgment because of the lack of specificity. Instead, Plaintiffs filed a response in which they admitted or denied each of the separately numbered paragraphs in the motion and argued that Butler did, in fact, have a duty to the decedent.

 The requirements of Rule 74.04(c) are not subject to waiver by a party. *Miller v. Ernst & Young*, 892 S.W.2d at 389. Where, however, a responding party sufficiently understands the issues· to make a specific response, and the issues presented are clear to the trial and appellate courts, the particular requirements of Rule 74.04(c) may be considered as having been met. *Agri-Bank FCB v. Cross Timbers Ranch*, 919 S.W.2d 263, 267–68 (Mo.App. S.D.1996). We believe that principle applies here where, in addition to responding to the motion without objection, Plaintiffs do not state how they contend that the motion was defective procedurally.

Plaintiffs also argue in their first point that the trial court decided the motion on a basis other than that on which Butler sought relief. They point to the fact that the motion for summary judgment was not based on the exclusiveness of a remedy under workers' compensation, yet the order granting the summary judgment contained the following:

> The Court finds and concludes because of the exclusivity of the Worker's [sic] Compensation Remedy under Chapter 287 V.A.M.S. this Court has no subject matter jurisdiction as to the claim asserted by Plaintiffs against Defendant Brent Butler in Count IV of the Petition.

Butler's motion was based on the nonexistence of a genuine issue of material fact concerning his lack of a duty as a matter of law. The court's order granting the summary judgment also contained the following:

> The Court finds that there is no genuine issue as to any material fact that estab-

lishes or relates to Defendant Brent Butler's status, duty owed to William Glen McAninch II, or to this Court's jurisdiction.

Although the trial court's order referred to the exclusive nature of a workers' compensation remedy, it is also clear that it held that summary judgment was appropriate for the reasons expressed in Butler's motion. The first point is denied.

In their second point, Plaintiffs contend that the summary judgment was error because evidence existed which created genuine issues of material fact. This contention refers to Plaintiffs' allegation that Butler was negligent in designing the building so that the exit of the sewer line was at such a depth as to require the digging of a trench ten or eleven feet deep in order to hook onto the city's sewer main. In addition, they contend that certain evidence demonstrates that Butler participated in determining the cause and developing corrective measures to deal with fill dirt in the area of the accident which was unstable or had settled.

 When the moving party is "a defending party" who does not bear the burden of persuasion at trial, that party need not controvert each element of the non-movant's claim in order to establish a right to summary judgment. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d at 381. Rather, a "defending party" may establish a right to judgment by showing, among other things, that there is no genuine issue concerning any one of the necessary elements of the claimant's case. *Id.*

 One of the elements a claimant must establish in a negligence case is a legal duty by the defendant to conform to a certain standard of conduct to protect others against unreasonable risks. *Hoover's Dairy, Inc. v. Mid–Am. Dairymen, Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1985). The existence of a duty is a matter of law to be determined by the court. *Burns v. Black & Veatch Architects, Inc.*, 854 S.W.2d 450, 453 (Mo.App. W.D. 1993). In the instant case, Butler's motion was directed to his lack of a duty, as a matter of law, with reference to Mr. McAninch and the trench in question.

■ Butler's motion, supported by his agreement with the owner and his affidavit, alleged that the scope of his work on the project did not include "the manner and method of the compaction of the fill dirt, solving and settling sinking problems, designing and establishing specifications for the safe and proper methods of trench and ditch digging, designing plumbing [sic] systems including the sewer main, notifying or warning workers as to the dangers of working on site, informing, preparing or instructing workers as to safe methods of constructing ditches for sewer lines, selecting construction sites, or directing construction." He also alleged that: he had no authority or responsibility for "directing construction, including but not limited to job safety, workmen's insurance and protection, and construction scheduling"; he had not assumed voluntarily or involuntarily any duty to Mr. McAninch; and there was no genuine dispute as to any material facts regarding whether he had a duty to Mr. McAninch.

Butler's agreement with the owner was also incorporated into his motion. It provided that the scope of his work was the preparation of a site plan; unit floor plans showing architectural, mechanical, and electrical information; building plans showing the "congregation of the various Unit plans"; foundation plans and details; interior millwork; and "other support documents as the Architect deems appropriate for the Project." It specifically provided that construction site visits were not included in the scope of work; it required the owner to "secure adequate construction supervision for the Project"; and it provided that "[t]he Architect has no authority nor responsibility for directing construction, including but not limited to jobsite safety, workmen's insurance and protection and construction scheduling."

■ When a moving party makes a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to a judgment as a matter of law, the adverse party is not permitted to rest upon the mere allegations or denials of his pleadings. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d at 381. "[T]he non-movant's *only* recourse is to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *Id.* Rule 74.04(c)(2) requires that a response to a motion for summary judgment:

shall admit or deny each of movant's factual statements . . . , shall state the reason for each denial, shall set out each additional material fact that remains in dispute, and shall support each factual statement asserted in the response with specific references to where each such fact appears in the pleadings, discovery or affidavits.

Where the motion for summary judgment and the response thereto show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law, summary judgment is to be entered in favor of the moving party. Rule 74.04(c)(3).

Although Plaintiffs' point relied on is couched in terms of the existence of evidence which creates a genuine issue of material fact, their argument is partially based on the alleged insufficiency of Butler's motion. They argue that the motion did not demonstrate that Butler was entitled to a judgment as a matter of law on their pleaded allegation that he was negligent in the design of the building because it effectively required a trench ten or eleven feet deep in order to hook the line to the city's sewer main. Like the other allegations of the petition, however, this allegation was not actionable if Butler had no duty concerning the manner of digging the trench or protecting it from collapse.

In responding to the motion, Plaintiffs denied Butler's contentions, and referred the trial court to portions of Butler's deposition in support of the statement that his "architectural plans also included specifications, both explicit and implied, regarding requirements for the plumbing system." The deposition testimony referred to, however, concerned the fact that Butler had gone over the general scope of the work called for by the plans with Mr. McAninch and answered any questions he had. The response was not supported by any pleadings, discovery or af-

fidavits indicating that this review concerned the matter of the trench, how it should be dug or protected, or any safety precautions which should be taken when working in it.

Plaintiffs also contested the allegation in Butler's motion that he had no authority or responsibility for directing construction, including job safety. In their response, they alleged that he had approval authority on all payments to employees and subcontractors. Plaintiffs do not demonstrate, however, how this created a genuine issue of fact concerning his duty with reference to the safety of the trench.

Plaintiffs also argue that there was evidence that Butler was involved in determining the cause and developing corrective action for the problem encountered during construction concerning unstable or settling fill dirt which they argue was in "close proximity" to the location where the accident occurred. Included in their allegations of negligence against Butler was the contention that he failed "to select a more practical and safer method which was available for solving the sinking and settling problems of the building and the problems with the instability of the fill dirt areas."

As indicated above, Butler's motion for summary judgment, supported by his affidavit, alleged that the scope of his work on the project did not include "the manner and method of the compaction of the fill dirt, [or] solving and settling sinking problems." In response, Plaintiffs alleged that "Butler was involved with the solving and determining the manners and methods used in solving the sinking problem or the problem with the fill dirt being unstable." Plaintiffs argue that the existence of that problem should have placed Butler on notice of the dangers of excavating in that area.

In their response to the motion, Plaintiffs referred the court to portions of Butler's deposition, but that testimony only demonstrated that Butler was notified about the problem, and that he measured some elevations with a surveying instrument, with the result that he felt that a part of the wall had "heaved up," and that this "could have been" caused by saturated soil. When asked what he determined should be done to correct it,

he said that by the time he visited the site, the engineer on the job had already been there, discussed solutions, and had begun preparing drawings. This does not demonstrate a genuine issue of material fact about whether the scope of Butler's work included solving any settling problems. Additionally, even if Butler did participate in solving the settling problem with the building, that does not necessarily indicate that he had a duty concerning the trench which was dug to accommodate a sewer line. Plaintiffs referred the trial court to no facts indicating a connection between the two.

Plaintiffs' response to the motion also contained the following statement, apparently referring to the problem with the fill dirt, and the contention that Butler's plans included specifications for the plumbing system: "Both of these areas of involvement by [Butler] had significant impact on and ramifications for the other construction activities taking place in the area in which the accident occurred on April 3, 1990." This statement was not supported by the citation to any supporting evidence.

Both Plaintiffs and Butler recognize the significance of *Burns v. Black & Veatch Architects, Inc.*, 854 S.W.2d 450. That case involved a suit filed by a workman who was injured when a trench in which he was working collapsed. One of the defendants was Black & Veatch, which had prepared plans and specifications for the project in accordance with its agreement to perform architectural services. The theories of liability included breach of contract and negligence. Black & Veatch's motion for summary judgment, which was sustained by the trial court, claimed that it owed no duty to protect the injured plaintiff. In affirming, the appellate court held that "architects are under no duty to supervise construction unless they expressly agree to do so." *Id.* at 454. It noted that Black & Veatch had not specified the means and methods of excavating or protecting the trench in which the plaintiff was injured, and held that it was under no contractual duty to protect the plaintiff. *Id.* at 454–55.

In *Burns*, the plaintiff also alleged that Black and Veatch knew or should have

known that the soil was unstable and that the trenches it designed, coupled with the soil conditions, created a dangerous condition without shoring, bracing, or other protection. As in the instant case, however, there were no allegations that Black & Veatch inspected the excavation. In response to plaintiffs' additional contention that Black & Veatch failed to inspect the construction site as required by the contract, the court held that the contract did not create a duty to protect workers on the job. *Id.* at 455. The *Burns* court quoted, with approval, language from *Hanna v. Huer, Johns, Neel, Rivers & Webb*, 233 Kan. 206, 662 P.2d 243 (1983), where the court said that the great weight of authority supports the rule that an architect does not assume responsibility for the day-to-day methods utilized by a contractor to complete the construction.

Based upon the issues presented to the trial court in connection with the motion for summary judgment, as well as the *Burns* decision, we are unable to conclude that the trial court erred in granting the summary judgment.

Judgment affirmed.