Terri Lynn GILES, Appellant,

v.

AMERICAN FAMILY LIFE
INSURANCE COMPANY,
Respondent.

No. WD 55768.

Missouri Court of Appeals,
Western District.

March 2, 1999.

Max D. Goracke, Kansas City, for Appellant.

Michael J. Tubbesing, Kansas City, for Respondent.

Before: ULRICH, P.J., and SMART and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Terri Lynn Giles appeals from the judgment of the circuit court directing a verdict, at the close of her opening statement, in favor of the respondent, American Family Life Insurance Company, on her claim for payment of insurance benefits, as the result of the death of her husband, Terry E. Giles.

The appellant raises two points on appeal. In her first point, she claims that the trial court erred in granting a directed verdict for the respondent, at the close of her opening statement, because her opening statement was sufficient to make a submissible case on her claim for breach of an insurance contract in that it outlined for the jury the nature of her claim, that the respondent agreed to provide insurance coverage on her husband's life from the time he applied for coverage, but refused to pay benefits upon his death. In her second point, she claims that the trial court erred in directing a verdict for the respondent at the close of her opening statement without giving her the opportunity to supplement it after the respondent moved for a directed verdict, because it was required to do so as a matter of law.

We reverse and remand.

## Facts

On June 7, 1996, the appellant and her husband met with Tom LaFontaine, an insurance agent for the respondent, to inquire about purchasing life insurance for Mr. Giles. Mr. Giles completed two separate applica-

tions for insurance. The first application, Application 8003, was for a policy of whole life insurance in the amount of $50,000. To complete their purchase of this policy, Mr. and Mrs. Giles gave LaFontaine a check, dated June 7, 1996, in the amount of $90.40 as an initial premium payment. LaFontaine gave them a conditional receipt for the premium paid on Application 8003, which was dated June 7, 1996. Pursuant to the conditional receipt, the respondent agreed to provide coverage on Mr. Giles' life from the date of the receipt, if all required conditions were met. There is no dispute that all conditions for coverage under Application 8003 were satisfied.

The appellants also completed Application 8002 for a policy of term life insurance in the amount of $50,000. Mr. and Mrs. Giles gave LaFontaine a check for an initial premium payment in the amount of $25.20. However, because they did not have sufficient funds in their checking account to cover this check, it was post-dated to June 23, 1996. LaFontaine gave them a conditional receipt for the premium paid, dated June 23, 1996, for Application 8002. This conditional receipt was identical to the one issued for Application 8003, providing coverage on Mr. Giles' life from the date of receipt if all conditions were met. There is a dispute as to whether all conditions were satisfied for coverage under Application 8002, specifically as to whether Mr. Giles was required to undergo a medical examination.

On June 26, 1996, Mr. Giles died as a result of injuries he sustained in an automobile accident. Thereafter, the appellant received payment of $50,000 under the whole life policy issued on Application 8003. However, the respondent refused to pay benefits as to Application 8002, claiming that all the conditions for coverage had not been satisfied. As a result, on November 14, 1996, the appellant filed her "Petition on Insurance Contract" in the Circuit Court of Jackson County alleging that the respondent had breached the insurance policy and vexatiously refused to pay her the benefits owed. In her petition, she alleged that her husband was insured with the respondent under Policy No. 1565459-1, which was in full force and

effect at the time of her husband's death. She further alleged that the respondent refused to pay her all the benefits that were due her under this policy. In its answer, the respondent denied that Mr. Giles was insured under Policy No. 1565459-1. The respondent moved for summary judgment alleging that there was no coverage under the conditional receipt issued pursuant to Application 8002 because Mr. Giles had not undergone a medical examination as required. This motion was denied on September 25, 1997.

A jury trial on the appellant's petition began on January 13, 1998. The appellant's attorney gave his opening statement. At the close of the statement, counsel for the respondent moved for a directed verdict arguing that the appellant's opening statement was insufficient to make a submissible case in that it admitted that no life insurance policy was in effect and failed to make reference to the conditional receipt issued pursuant to Application 8002. The court reserved its ruling on the motion until after the respondent had completed its opening statement. After the respondent's opening statement, the parties were permitted to argue their positions to the court, outside the hearing of the jury. The trial court then granted the respondent's motion for directed verdict. In doing so, the trial court found that it affirmatively appeared, as a matter of law, that proof of the facts recited in the appellant's opening statement, together with all reasonable inferences in her favor, would not result in a submissible case. On January 15, 1998, the trial court, the Honorable Rick R. Wilson, entered its written summary judgment in favor of the respondent.

This appeal follows.

## I.

In her first point, the appellant claims that the trial court erred in granting a directed verdict for the respondent, at the close of her opening statement, because it was sufficient to make a submissible case on her claim for breach of an insurance contract in that it outlined for the jury the nature of her claim, that the respondent agreed to provide insurance coverage on her husband's life from the

time he applied for coverage, but refused to pay benefits upon his death. We agree.

In reviewing the grant of a directed verdict for a defendant, we review to determine if the plaintiff made a submissible case. *Bond v. California Compensation & Fire Co.*, 963 S.W.2d 692, 695–96 (Mo.App.1998). When a directed verdict is granted at the close of the plaintiff's opening statement, we review the petition and the opening statement in determining whether the plaintiff made a submissible case. In reviewing the sufficiency of the petition and the opening statement, both should be construed broadly. *Droz v. Trump*, 965 S.W.2d 436, 442 (Mo. App.1998); *Hays v. Missouri Pac. R.R. Co.*, 304 S.W.2d 800, 804 (Mo.1957). The granting of a directed verdict will not be reversed on appeal if it was correct for any reason. *Runny Meade Estates, Inc. v. Datapage Techs. Int'l, Inc.*, 926 S.W.2d 167, 170 (Mo. App.1996). However, a directed verdict should be granted only if reasonable people could not differ as to the correct disposition of the case. *Harder v. Director of Revenue*, 969 S.W.2d 340, 341 (Mo.App.1998).

Generally, "courts should be reluctant to direct a verdict at the close of plaintiff's opening statement." *Brouk v. Brueggeate*, 849 S.W.2d 699, 702 (Mo.App.1993). To do so is "highly unusual and rarely justified." *Hoefer v. Roche Biomedical Lab., Inc.*, 826 S.W.2d 49, 50 (Mo.App.1992). This is because the opening statement is merely an outline, not a detailed statement, of the anticipated proof. *Dotson v. Hammerman*, 932 S.W.2d 880, 883 (Mo.App.1996). Counsel is neither expected nor required to recite every detail of evidence to be offered. *Id.* Rather, the primary purpose of the opening statement is to inform the judge and jury of the general nature of the action so as to enable them to understand the case. *Hays*, 304 S.W.2d at 804. The opening statement is not a test of the sufficiency of the evidence. *Id.* Counsel is permitted great latitude in making an opening statement, and this latitude extends to what is not said as well as to what is said. *Id.* Thus, the opening statement is not required to contain all or necessarily even a major part of a party's case. *Id.*

A trial court should direct a verdict at the close of the plaintiff's opening statement in only two situations: (1) where counsel makes an admission which affirmatively demonstrates as a matter of law that plaintiff has no cause of action or is not entitled to recover; or (2) where the facts recited in the opening statement, if proved, do not, as a matter of law, constitute enough to make a submissible case to go to the jury. *Dotson*, 932 S.W.2d at 883. However, it is only appropriate to direct a verdict in the second situation where it affirmatively appears that the whole of the plaintiff's case has been fully set forth in the opening statement and that proof of the recited facts, together with all reasonable inferences in plaintiff's favor, would not result in a submissible case. *Id.* at 883–84. In either situation, the trial court may direct a verdict at the close of the plaintiff's opening statement to avoid the unnecessary and useless process of taking testimony which is known in advance to be insufficient. *Id.* at 884.

The respondent asserts that both situations in which it is appropriate to direct a verdict at the close of the plaintiff's opening statement were present in the instant case. As to the first situation, the respondent contends that the appellant, in her petition on her claim for breach of contract, sought payment of death benefits under Policy No. 1565459–1, yet her attorney admitted in his opening statement that no policy of insurance existed at the time of Mr. Giles' death. As such, the respondent argues that, as a matter of law, the appellant admitted in her opening statement that she had no cause of action, as pled. As to the second situation, it argues that the appellant's opening statement fully and completely set forth her case, but failed to reference any policy of insurance that had allegedly been issued on Application 8002. As such, it argues that the facts that the appellant expected or intended to prove, as recited in her opening statement, were not sufficient to make a submissible case for payment of life insurance benefits based on Application 8002.

To determine the sufficiency of the appellant's opening statement in outlining a sub-

missible case of breach of an insurance contract in order to defeat the respondent's motion for directed verdict, we must logically look to the allegations of her petition to ascertain the nature of her claim or cause of action.

> "In order to determine the cause of action pleaded in a petition, this court must read the petition 'from its four corners' and in its entirety. We must give the language its plain and ordinary meaning and interpret it as it fairly appears to have been intended by the pleader."

*Droz,* 965 S.W.2d at 442 (*quoting Burns v. Black & Veatch Architects, Inc.,* 854 S.W.2d 450, 457 (Mo.App.1993)). All averments in a petition should be given a liberal construction and should be accorded all reasonable inferences fairly deducible from the facts stated. *Id.* Further, all pleadings should be construed so as to do substantial justice. Rule 55.24 [1]; *Burckhardt v. General Am. Life Ins. Co.,* 534 S.W.2d 57, 63 (Mo.App.1975).

■ To state a cause of action for breach of a life insurance contract, a petition must allege: (1) the existence and terms of the policy; (2) the right or interest entitling the plaintiff to sue; (3) performance or waiver of conditions precedent; (4) death of the insured; (5) the amount of the insurance; and (6) the fact that payment is due, but has not been made. *Burckhardt,* 534 S.W.2d at 64. In the appellant's petition, on her claim for payment of death benefits, she alleged, *inter alia,* that: (1) her husband's life was insured with the respondent under Policy No. 1565459-1 in the amount of $50,000; (2) she was the primary beneficiary; (3) the policy was in force at the time of her husband's death; (4) her claim for benefits was refused; and (5) the respondent's refusal to pay was vexatious.

Although the appellant alleged in her petition that her husband's life was insured under a "policy" of insurance, she concedes in her brief that no written policy had actually been issued at the time of Mr. Giles' death and that she had admitted this fact in her opening statement. Although, she offers no explanation for the policy number alleged, a possible explanation may be found in the respondent's check to the appellant, representing a refund of the initial premium payment made at the time the application was completed, which referenced this number. In any event, the appellant contends that, despite the policy reference in her petition, she still should have survived the respondent's motion for directed verdict at the close of her opening statement in that the policy coverage to which she was referring in her petition and opening statement was a "conditional receipt" policy of coverage. In this respect, she contends that the respondent, pursuant to its receipt for payment of premium as to Application 8002, agreed to provide coverage on the appellant's husband's life from the time of application. This receipt read, *inter alia,* as follows:

> ***THIS RECEIPT PROVIDES INSURANCE IF ALL OF THESE CONDITIONS ARE MET FOR PROPOSED INSUREDS LISTED ON THIS APPLICATION AND ON ANY OTHER APPLICATION FOR COVERAGE UNDER THE SAME POLICY SUBMITTED AT THE SAME TIME.***

Giving the appellant's petition a liberal construction, we believe that it was susceptible to the interpretation given to it by her. Moreover, given the record, the appellant's theory is consistent with the respondent's understanding of the same. We glean this from the fact that the respondent's motion for summary judgment, that was denied, specifically references this theory, as did its opening statement. In any event, the respondent contends that this theory was not sufficiently outlined in the appellant's opening statement. Hence, in determining the sufficiency of the appellant's opening statement, we must determine whether she adequately outlined in her opening statement her entitlement to payment of death benefits under the conditional receipt issued by the respondent pursuant to Application 8002.

■ In his opening statement, the appellant's attorney outlined the circumstances surrounding the completion of Applications 8002 and 8003, the death of Mr. Giles, and the payment of benefits under Application

1. All rule references are to the Missouri Rules of Civil Procedure, unless otherwise indicated.

8003. He informed the jury that the issue presented for their resolution was "should American Family have written or paid on both policies instead of one?" In arguing that the respondent should have written and paid on both policies, he asserted that no medical examination was required as a condition of coverage under Application 8002. As such, he stated that all conditions for coverage had been satisfied, entitling the appellant to payment of insurance benefits under Application 8002. Because the appellant was seeking the payment of benefits under Application 8002, not a policy that had been issued, her admission in her opening statement that no policy had been issued at the time of her husband's death was consistent with her theory of recovery and was not fatal to her cause of action. Further, her opening statement set out the circumstances surrounding the completion of Application 8002, her husband's death, and the respondent's refusal to pay her death benefits on her husband's life. As such, it was sufficient to make a submissible case for payment of death benefits under Application 8002, the basis asserted by the appellant for recovery.

Our review of the appellant's opening statement leaves us with the firm conviction that it was sufficient to withstand a motion for directed verdict. Neither of the two situations in which it is proper for a trial court to direct a verdict for the defendant at the close of the plaintiff's opening statement was present here. *See Dotson*, 932 S.W.2d at 883. As such, the circumstances of this case did not support the "highly unusual and rarely justified" act of directing a verdict for the respondent at the close of the appellant's opening statement. *Hoefer*, 826 S.W.2d at 50. Thus, we find that the trial court erred in directing a verdict for the respondent.

Because our resolution of this point is dispositive of the appeal, we do not address the appellant's remaining point.

### Conclusion

The judgment of the circuit court directing a verdict for the respondent at the close of the appellant's opening statement is re-versed, and the cause is remanded for further proceedings consistent with this opinion.

All concur.