J.E. O'Toole Engineering Co., Inc. ("O'Toole"), filed a declaratory judgment action against Apel Machine Supply Co., Inc. ("Apel"), seeking a declaration that a contract provision constituted an agreement by Apel to indemnify O'Toole. The trial court granted O'Toole the relief requested, and Apel appeals.
In October 1983, O'Toole entered into a contract with the City of Moulton, Alabama ("the City"), to provide certain engineering services in connection with a sewer improvement project for the City (this contract will be referred to as the "O'Toole contract"). O'Toole prepared bid documents for the City and reviewed the bids submitted by various contractors for work on the sewer improvement project. Apel's bid to serve as general contractor for the project was accepted, and Apel entered into a contract with the City ("Apel contract"). Apel subcontracted installation of the sewer pipe to Burrell Construction Company ("Burrell").
Tolbert Ward was an employee of Burrell on the project. On August 1, 1984, he and his coworkers were laying sewer pipe in a trench. While Ward was in the trench, the banks caved in on him, and he suffered personal injuries. It is disputed whether the sides of the trench were braced with jacks, or sheaths, or shoring, or were braced at all, at the time of the cave-in. Ward subsequently filed suit in the Circuit Court of Jefferson County, Alabama, against O'Toole, Apel, L.M. Lyons (as O'Toole's inspector on this job), Horace Burrell, and Bituminous Insurance Company, which allegedly undertook a duty to inspect the construction site. O'Toole filed this action for declaratory judgment, seeking a judgment declaring that it was entitled to indemnity from Apel as to any liability adjudged against it in Ward's suit. O'Toole's indemnity claim is based on the Apel contract.
The leading Alabama case on indemnity agreements isIndustrial Tile, Inc. v. Stewart, 388 So.2d 171 (Ala. 1980),cert. denied, 449 U.S. 1081, 101 S.Ct. 864, 66 L.Ed.2d 805
(1981). In Industrial Tile, the Court held:
 "[I]f the parties knowingly, evenhandedly, and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language, then such agreements will be upheld."
Id. at 176.
O'Toole contends that the Apel contract contains two provisions whereby Apel agreed to indemnify O'Toole. Under one provision, O'Toole argues, Apel agreed to indemnify the City and O'Toole for all claims for personal injury arising out of "the work covered by the contract, regardless of how it may be caused":
 "Contractor hereby agrees to indemnify and hold harmless Owner and Engineer, *Page 447 
and any of their officers, directors, and employees from any and all claims, suits, or judgments, based upon damage to property or injury or death to persons arising out of, or connected with, the work covered by the contract, regardless of how it may be caused, and will provide them with a defense to said claims and pay all costs of defending and investigating said claims, including attorneys fees."
(Apel contract, "Addendum No. 1") (emphasis added).
O'Toole argues that a second indemnification clause requires Apel to indemnify the City and O'Toole for all claims for personal injury "on account of or in consequence of any neglect in safeguarding the work":
"RESPONSIBILITY FOR DAMAGE CLAIMS
 "The Contractor shall indemnify and save harmless the Owner, the Engineer, and employees from all suits, actions, or claims of any character brought because of any injuries or damages received or sustained by any person, persons, or property on account of the operations of said Contractor; or on account of or in consequence of any neglect in safeguarding the work; or through use of unacceptable materials in constructing the work; . . ."
(Apel contract, "General Specifications," § 7.06) (emphasis added).
Both of these provisions were included in the bid documents that O'Toole prepared for the City and were part of the conditions attached to Apel's bid for the project.
In addition, the Apel contract specified that Apel alone was responsible for the safety of the methods used to install the pipe:
"PROTECTION OF LIVES AND HEALTH
 "In order to protect the lives and health of his employees under the contract, the Contractor shall comply with all pertinent provisions of the 'Manual of Accident Prevention in Construction' issued by the Associated General Contractors of America, Inc., and shall maintain an accurate record of all cases of death, occupational disease, and injury requiring medical attention or causing loss of time from work, arising out of and in the course of employment on work under the contract. He alone shall be responsible for the safety, efficiency, and adequacy of his plant, appliances, and methods, and for any damage which may result from their failure or their improper construction, maintenance, or operation."
(Apel contract, "Supplemental General Provisions of the Special Provisions") (emphasis added).
The Apel contract also stated that Apel was responsible for the safety of workers on the job site:
"SAFETY STANDARDS AND JOB CONDITIONS
 "The Contractor will be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the work. He will take necessary precautions for the safety of, and will provide the necessary protection to prevent damage, injury or loss to all employees on the work and other persons who may be affected thereby. . . ."
(Apel contract, "Special Provisions").
Further, the Apel contract stated that it was Apel's responsibility to see that safety precautions such as sheathing or bracing were employed:
"SHEATHING AND SHORING
 "All trenches and other excavation must be maintained in an approved method to safeguard employees and others from injury and/or prevent damage to other structures or adjacent property. All construction work including trenching and other excavation pertaining to sewer construction shall conform to the latest requirement of safety codes with latest revisions and it shall be the Contractor's responsibility to see that such *Page 448 safety precautions are enforced and maintained. Any damage to streets, pavements, buildings, sewers, or any other structure whatsoever occurring through settlements due to failure or lack of proper tamping, sheathing or bracing shall be repaired by the Contractor at his own expense. The Contractor shall furnish, install, and properly maintain all sheathing and bracing to meet the above requirements at his own expense. . . ."
(Apel contract, "Standard Specifications," § 801.12(c)(3)) (emphasis added).
Finally, the Apel contract states that Apel assumes sole responsibility for on-the-job safety:
"REGARDLESS OF ANY PROVISIONS TO THE CONTRARY
 "1. Owner and Engineer have no duty to provide Contractor, any Subcontractor, or any of their agents or employees with a safe place to work or with safe appliances, equipment, or machinery. Owner and Engineer have no duty to inspect or approve the work site or the work practices, work methods, or appliances, equipment, or machinery of Contractor, any Subcontractor, or any of their agents or employees for the purpose of insuring either (1) the safety of persons or property involved in the performance of the contract or (2) compliance with any safety standards, rules, or regulations. All of the above duties are solely duties of the Contractor."
(Apel contract, "Addendum No. 1") (emphasis added).
Based on these provisions concerning both indemnity and responsibility for safety, as well as on deposition testimony, the trial court entered the declaratory judgment O'Toole had sought.
Apel contends that the indemnity provisions of the Apel contract are ambiguous, because, it says, the provisions could be construed to indemnify O'Toole for its breaches of its own duties under its own contract with the City. Accordingly, Apel argues, the provisions should be construed against O'Toole because O'Toole drafted the contract. This argument by Apel overlooks the fact that the term "contract" was defined in the Apel contract itself:
 "The written Agreement between the Owner and the Contractor, covering the performance of the work and the furnishing of the labor, equipment and materials in the construction. The Contract shall include, but shall not be limited to, the 'Notice to contractors,' 'Proposal,' 'Plans,' 'Standard Specifications,' 'Special Provisions,' 'Contract Agreement,' and 'Contract Bonds,' together with all the Supplemental Agreements and 'Extra Work Orders' that are required to assure completion of the work in a substantial and acceptable manner."
(Apel contract, "General Specifications," § 1.06). Thus, there is no ambiguity to be construed, and Apel's argument on this issue fails.
Apel also contends that O'Toole voluntarily undertook an active and affirmative duty to call to the attention of Apel and Burrell any unsafe condition at the project, that O'Toole is therefore a joint tort-feasor, and that, as such, O'Toole is not entitled to indemnity or contribution. Although the general rule in Alabama is that joint tort-feasors are not entitled to indemnity, when one joint tort-feasor agrees in writing to indemnify the other, even for claims based on the other's own negligence, the agreement, if it is a valid indemnity agreement, can be upheld, and the joint tort-feasor can receive indemnification. Crigler v. Salac, 438 So.2d 1375, 1386 (Ala. 1983); Industrial Tile, supra. Accordingly, even assuming that O'Toole is a joint tort-feasor, Apel's argument that O'Toole is not entitled to indemnity fails. Furthermore, considering the entire record, as well as the explicit provisions of the contract set forth earlier, the trial court would not have committed reversible error in finding as a fact that O'Toole did not undertake an active or affirmative duty to notify Apel or Burrell of any unsafe condition.
Under the requirements announced in Industrial Tile, O'Toole presented sufficient *Page 449 
evidence to sustain the trial court's judgment. The indemnity provisions were in a prominent position and were a part of the conditions attached to the bid proposal made by Apel for the sewer work. The evidence indicates that Apel, knowingly, evenhandedly, intelligently, and for valid consideration, entered into the agreement to indemnify O'Toole. The language of the indemnity provisions of the Apel contract is clear and unequivocal. Apel agreed to indemnify O'Toole against all claims based on damage, injury, or death "arising out of, or connected with, the work covered by the contract, regardless of how it may be caused"; Apel further agreed to indemnify O'Toole for loss "on account of or in consequence of any neglect in safeguarding the work."
The trial court did not commit reversible error in entering the declaratory judgment for O'Toole. The judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.