Kottmyer, J.
This is a civil action brought by Kenneth Fisher (“Fisher”) against M. Spineili & Sons Co., Inc. (“Spineili”) and Simpson Gumpertz and Heger, Inc. (“SGH”). Spineili and SGH have filed cross-claims against each other. Spineili has filed a third-party claim against Brisk Waterproofing Company (“Brisk”). Brisk has filed a fourth-party claim against Harvard Real Estate, Inc. (“Harvard”). SGH moves this Court to enter summary judgment in its favor on the claim *639 brought against it by Fisher, the cross-claim brought against it by Spinelli, and its crossclaim against Spinelli. For the reasons given below, SGH’s motion is allowed in part and denied in part.
BACKGROUND
The summary judgment record establishes the following material facts.
In 1994, Harvard contracted with SGH, an architectural firm, to prepare contract documents for the repair and waterproofing of the Mission Park Garage, a Harvard-owned property at 835 Huntington Avenue in Boston, Massachusetts. In 1995, Harvard contracted with Spinelli to be general contractor for the repair and waterproofing work. Spinelli subsequently subcontracted portions of the repair and waterproofing work to Brisk. Fisher was employed by Brisk. On February 21,1996, Fisher was shocked with electrical current when the jackhammer he was operating penetrated a concrete slab and came into contact with a live electrical conduit. Fisher filed this action on August 1, 1997.
Spinelli’s contract incorporated contract drawings and other documents that stated that an electrical conduit was embedded in the slab. Spinelli’s work specifically included locating and de-activating the conduit in the area undergoing repair before slab demolition. (Ex. 9.)[1] Spinelli was required by the contract to furnish all labor, materials, equipment and supervision to de-energize circuits embedded in concrete slabs under repair. (Ex. 7.)
The Owner/Architect Agreement as well as Spinelli’s contract documents stated that: SGH was responsible for the preparation of project plans, specifications, manuals, and other documents and ensuring that all of them were accurate and legible; SGH would conduct surveys, inspections, and site visits during the project to become generally familiar with the progress and quality of the work and to determine if the work was in accordance with the contract documents; SGH would administer the contract and act as a representative of Harvard with authority to act on Harvard’s behalf as authorized in the Owner/Architect Agreement; and Harvard or an authorized agent had the right to stop Spinelli’s work if it was not in accordance with the contract documents. (Ex. 2.)
The Owner/Architect Agreement as well as Spinelli’s contract documents also stated that: SGH would not be responsible for and Spinelli had sole responsibility for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection "with the work; Spinelli had sole control over or charge of acts or omissions of the contractor, subcontractors, or their agents or employees; SGH would not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the work; and SGH would not be responsible for Spinelli’s schedules or failure to carry out the work in accordance with the contract documents. (Ex. 4.)
Spinelli’s contract documents stated that:
[t]he actual determination as to whether [any] instructions may be safely and suitably carried out shall be the responsibility of the Contractor, and all . . . liability . . . arising from the employment of any construction means, methods, technique, sequences, or procedures shall be borne by the Contractor, notwithstanding that such construction means, methods, techniques, sequences, or procedures are referred to, indicated or implied by the Contract Documents, unless the Contractor has given timely notice to the Owner and Architect in writing that such means, methods, techniques, sequences or procedures are not safe or suitable and the Owner has then instructed the Contractor in writing to proceed. (Ex. 5.)
The contract documents also provided that Spinelli:
shall indemnify and hold harmless [SGH] from and against claims, damages, losses and expenses including, but not limited to, attorney’s fees, arising out of or resulting from performance of the Work provided that such claim, damage, loss or expenses is attributable to bodily injury, sickness, disease or death . . . but only to the extent caused in whole or part by negligent acts or omissions of the Contractor, the Subcontractor, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss, or expense is caused in part by a party indemnified hereunder.
(Ex. 4.) The contract documents further stated that Spinelli’s obligation to indemnify SGH did not extend to liability for “(1) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications, or (2) the giving or failure to give directions or instructions by [SGH] provided such giving or failure was the primary cause of the injury or damage.” (Id.)
DISCUSSION
This Court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r. of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Once a party moving for summary judgment has shown that there is no genuine issue of material fact, the burden is then upon the opposing party to respond and allege specific facts showing that there is a genuine triable issue. John B. Deary, Inc. v. Crane, 4 Mass.App.Ct. 719, 722 (1976). A party who does not bear the burden of proof at trial may demonstrate the *640 absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). The court assumes that all of the facts set forth in the nonmoving party’s affidavits are true and that any inferences favorable to the nonmoving party should be drawn. Coveney v. President & Trustees of College of Holy Cross, 388 Mass. 16, 17 (1983). In addition, a “court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had.” Mass.R.Civ.P. 56(f).
1. DUTY OF CARE
In support of its motion for summary judgment on Fisher’s claim against it, SGH argues that because SGH did not owe Fisher a duty of care, a necessary element of Fisher’s negligence claim against SGH, summary judgment must be entered in favor of SGH. See generally Lyons v. Morphew, 424 Mass. 828 (1997). The existence of a duty of care is a question of law. Id. at 836; Yakubowicz v. Paramount Pictures Corp., 404 Mass. 624, 629 (1989), citing Thieriault v. Pierce, 307 Mass. 532, 533 (1940) (“there can be negligence only when there is a duly to be careful’’); Ramsey Constr. Co. v. Apache Tribe of Mescalero Reservation, 673 F.2d 315, 321 (10th Cir. 1980) (requiring proof that architect owed a duty to plaintiff, such as by managing and coordinating construction work, for plaintiff to prevail on negligence claim). In considering whether architects, engineers, or other design professionals have a duty with regard to the safety of workers on a construction project, courts look to the agreement between the design professional and the owner, as well as to other contract documents. Parent v. Stone & Webster Eng. Corp., 408 Mass. 108, 113 (1990).
SGH had no contractual relationship with Spinelli, Brisk, or Fisher. Under the terms of the Owner/Architect Agreement and other contract documents, SGH was not responsible for safety in connection with the work; safety was the sole responsibility of Spinelli, as was the specific responsibility for de-energizing the electrical conduit embedded in the concrete slab. (Exs. 2, 4, 5, 7.)
The majority of jurisdictions hold that a design professional on a construction project who has no privity with a contractor or subcontractor is not responsible for the safely of construction workers at the work site, absent additional elements not present in this case. See, e.g., Romero v. Parkhill, Smith & Cooper, 881 S.W.2d 522, 525-27 (Tex.Ct.App. 1994) (engineering firm did not owe duty to employee of subcontractor who was injured at work site where owner/engineer contract provided that engineer was not responsible for the means and methods of the contract and the construction contract specifically provided that the contractor was responsible for the means, method, and safety precautions of the project).[2]
Fisher responds that a parly in the position of SGH owes a duty to workers at the site, if it had prior knowledge of a hazardous condition, and/or if its supervisory responsibility exceeded an obligation to inspect on behalf of the owner of a structure to assure compliance with plans and specifications. Fisher further argues that affirmative acts of misfeasance by an architect may create a duty of care. Frank D. Wagner, Annotation, Liability to One Injured In Course of Construction, Based Upon Architect’s alleged Failure to Carry Out Supervisory Responsibilities, 59 A.L.R.3d 869, 874 (1974), and supplement. The short answer to these arguments is that Fisher has adduced no evidence of contract terms or facts which would call into play any of these exceptions.[3] The contract documents placed sole responsibility for worker safety on Spinelli, including responsibility for locating and deactivating conduits and determining whether the architect’s instructions could be safely implemented.
Illustrative of cases which have considered and rejected arguments similar to those made by Spinelli in this case is Burns v. Black & Veatch Architects, Inc., 854 S.W.2d 450 (Mo.Ct.App. 1993). Burns was an employee of a contractor and was injured at the work site. Burns sued the architect, arguing that: (1) the architect had a contractual duty to control the means, methods, and safety of the construction; (2) by providing technical sections in the project manual, the architect defacto assumed control of the construction means, methods, and safely; (3) the architect’s duty to periodically inspect the site created a duly on part of the architect to ensure the safety of third parties. Id. at 453-56. The Court rejected Burns’ claims and affirmed summary judgment in favor of the architect.
First, the Burns Court cited contract language, similar to that at issue in this case, which allocated control and responsibility for means and methods of construction to the contractor, not the architect. Id. at 453-54. See also Hanna v. Huer, Johns, Neel, Rivers & Webb, 662 P.2d 243, 252 (Kan. 1983) (recognizing the “great weight of authority” that an architect does not by reason of any supervisory authority over construction assume responsibility for day-to-day methods utilized by the contractor to complete the construction). As a general matter, “architects are under no duty to supervise construction unless they expressly agree to do so.” Burns, 854 S.W.2d at 454.
Second, the Burns Court ruled that the construction work manual’s technical sections, setting forth general conditions and instructing the contractor to provide shoring and bracing where needed, did “not constitute specific means or methods.” Id. at 454. See also Wells v. Stanley J. Thill & Assocs., Inc., 452 P.2d 1015, 1018 (Mont. 1969) (affirming summary judgment in favor of engineer on grounds that engineer was not responsible for failure of contractor to shore trench *641 during excavation because duty was not to control means, methods, and safety of construction but “to see that a certain end result was eventually accomplished, namely that the project as finally constructed and turned over to the city met the plans and specifications . . . The engineer’s real interest was not in the actual construction but in a completed project in accordance with the plans and specifications”).
Third, the Burns Court held that the architect’s duty to inspect “creates a duty ... in favor of [the owner] to assure the finished product is structurally sound and conforms to the specifications . . . The contract provision does not create a duty for [the architect] to protect workers on the job.” Burns, 854 S.W.2d at 455. See also Yocum v. City of Minden, 649 So.2d 129, 131-32 (La.Ct.App. 1995) (affirming lower court’s ruling in favor of engineer that contractual duty to “conduct on-site observations” did not create a duty to warn of dangerous work conditions when contract expressly prohibited engineer from guiding general contractor’s means and methods); Dillard v. Shaughnessy, Fickel & Scott Architects, 864 S.W.2d 368, 370 (Mo.Ct.App. 1993) (construing contract language similar to that at issue in this case, court affirmed summary judgment in favor of architect and structural engineer on grounds that contractual duty to visit site occasionally did not create responsibility for project safety; contract provisions made safety the responsibility of contractor). Further, even if a design professional has a duty to inspect a site, he does not for that reason alone “assume responsibility for either the day-to-day construction methods utilized by the contractor or the contractor’s negligence.” Shepherd Components, Inc. v. Brice Petrides-Donohue & Assocs, Inc., supra 473 N.W.2d at 616.[4] See also Liability to One Injured in Course of Construction, Based Upon Architects Alleged Failure to Carry Out Supervisory Responsibilities, 59 A.L.R.3d at 875-76.
Because SGH did not owe Fisher a duty as a matter of law, summary judgment must enter on Fisher’s claim against SGH. Because the contract provisions dictate this result, additional discovery of facts under Mass.R.Civ.P. 56(f) would serve no purpose. Comm. v. Fall River Motor Sales, Inc., 409 Mass. 302, 309 (1991).
II. INDEMNIFICATION OF SGH
The indemnification provision in the contract documents broadly requires Spinelli to indemnify and hold harmless SGH and to pay SGH’s attorneys fees on claims for personal injuries arising out of the repair and waterproofing work where the claimed injuries were caused by negligence of Spinelli or its subcontractor. Rathburn v. Western Mass. Electric, 395 Mass. 361, 363 (1985); Shea v. Bay State Gas Co., 383 Mass. 218, 223-25 (1981). SGH alleges that it is entitled to indemnification because this case; (1) arises out of performance of the repair and waterproofing work; (2) is attributable to bodily injury; and (3) involves injuries caused, at least in part, by the negligence of Spinelli, Brisk, or their employees. Courts have upheld similar indemnification clauses. Shea, 383 Mass. at 225 (contractor obliged to indemnify engineering firm, with which it had no privity, pursuant to indemnification provision in owner/contractor agreement, even if engineer at fault); Whittle v. Pagani Bros. Constr. Co. Inc., 383 Mass. 786, 799 (1981) (contractor’s agreement to indemnify architect enforceable); Apel Machine & Supply Co., Inc. v. J.E. O’Toole Engineering Co., Inc., 548 So.2d 445, 449 (Ala. 1989), 548 So.2d at 449 (indemnification clause required contractor to indemnify engineering firm for liability arising from injury to subcontractor’s employee). The clause at issue in this case expressly covers expenses and attorneys fees. Cf. Amoco Oil Co., Inc. v. Buckley Heating, Inc., 22 Mass.App.Ct. 973, 973 (1986) (followinglong-standing principle that if a right of indemnity is conferred, indemnitee may recover reasonable attorneys fees and costs incurred in resisting claims within the compass of indemnity).
But a prerequisite to judgment in favor of SGH has not yet been satisfied, le„ proof of negligence by Spinelli, Brisk, or their employees. Questions of negligence in general are ones of fact, for determination by a jury. Hubert v. Melrose-Wakefield Hosp. Assoc., 40 Mass.App.Ct. 172, 177 (1996); Pucci v. Amherst Restaurant Enterprises, Inc., 33 Mass.App.Ct. 779, 786 (1992), rev. den., 414 Mass. 1103 (1993). Negligence on the part of Spinelli or its subcontractor may be a foregone conclusion in this case, but it must be established before SGH can invoke the indemnification clause. Erland Constr. Co., Inc. v. Park Steel Corp., 41 Mass.App.Ct. 919, 919 (1996). Therefore, SGH’s motion for summary judgment on its cross-claim against Spinelli is denied at this time.
III. CONTRIBUTION FROM SGH
As a matter of law, Spinelli would not be entitled to contribution from SGH if SGH was entitled to indemnification from Spinelli, even if SGH were in part at fault. Where one tortfeasor “is entitled to indemnity from another . . . the obligor shall not be entitled to contribution from the obligee for any portion of his indemnity obligation.” G.L.c. 231B, § 1 (e). Under the terms of the indemnification provision if Spinelli is negligent, it is required to indemnify SGH; therefore as a matter of law Spinelli may not seek contribution from SGH. Wolfe v. Ford Motor Co., 386 Mass. 95, 100-01 (1982); Callahan v. A.J. Welch Equipment Co., 36 Mass.App.Ct. 608, 613 (1994). Similarly, Spinelli is not entitled to indemnification as a matter of common law because “[t]he general rule is that a person who negligently causes injuiy to a third person is not entitled to indemnification from another person who also negligently caused that injury.” Rathburn v. Western Mass. Electric, 395 Mass. 361, 363 (1985). Therefore, SGH’s motion for summary judgment on Spinelli’s cross-claim against it is allowed. Because any liability on the part of Spinelli will necessarily be *642 predicated on its own negligence, it has no right to indemnification.
ORDER
It is therefore ORDERED that summary judgment enter for the defendant Simpson Gumpertz and Heger, Inc. on plaintiff Kenneth Fisher’s claims against it. Simpson Gumpertz and Heger, Inc.’s Motion for Summary Judgment on defendant M. Spinelli & Sons Co., Inc.’s cross claim against it is ALLOWED. Judgment on defendant Simpson Gumpertz and Heger, Inc.’s cross-claim against defendant M. Spinelli & Sons Co. is DENIED.

Unless otherwise noted, citations are to exhibits filed by SGH in support of its motion for summary judgment.

Accord, Peck v. Horrocks Engineers, Inc., 106 F.3d 949, 952 (10th Cir. 1997) (applying Utah law); Hausam v. Victor Gruen & Assocs., 408 N.E.2d 1051, 1055-56 (Ill.App.Ct. 1980); Teitge v. Remy Constr. Co., 526 N.E.2d 1008, 1014-15 (Ind.Ct.App. 1988); Shepherd Components, Inc. v. Brice Petrides-Donahue & Assocs., Inc., 473 N.W.2d 612, 615-17 (Iowa 1991); Hanna v. Huer, Johns, Neel, Rivers & Webb, 662 P.2d 243, 253-54 (Kan. 1983); Burns v. Black & Veatch Architects, Inc., 854 S.W.2d 450, 454-55 (Mo.Ct.App. 1993); Davis v. Lenox School, 541 N.Y.S.2d 814, 815 (Sup.Ct.App.Div. 1989); Marshall v. Port Authority of Allegheny Cty., 525 A.2d 857, 861-63 (Pa.Comm.Ct. 1987), app. granted, 541 A.2d 748 (Pa. 1988), order aff., 568 A.2d 931, 935-37 (Pa. 1990).

Plaintiffs belated submission of a drawing marked Supplemental Exhibit 1 does not fill the gap. There is no admissible evidence in the record authenticating “supplemental exhibit 1,” establishing that it is a drawing of the area where the accident took place, or that SGH prepared it or provided it to anyone. See Spinelli Dep. at 65-66. Plaintiff identifies the document as Ex. 3 to the Spinelli Deposition. In fact, it is marked Ex. 2. Even if Supplemental Exhibit 1 had been properly authenticated, Spinelli testified that it showed the ceiling, not the slab. (Id. at 134.) The fact that, as argued by Fisher, Brisk may have believed the drawing depicted the slab is irrelevant.

Cf. Case v. Midwest Mechanical Contractors, Inc., 876 S.W.2d 51; 53 (Mo.Ct.App. 1994). In Case, an architect agreed to review safely programs of a contractor. Nevertheless, the court affirmed summary judgment in favor of the architect.
Although [the architect] agreed to review the safety programs of the general contractor and their trade contractors and make appropriate recommendations, the contract nevertheless placed responsibility for the safety of those persons upon those contractors. [The architect] never agreed to supervise the construction of the Correctional Center and never expressly agreed to assume responsibility for safety precautions to be taken during construction. It is a far ciy from being responsible to review the safety programs of others to specifically assuming responsibility for safety precautions to be taken.
Id. at 53.