Burnes, Nonnie S., J.
This is an action brought by the plaintiff, Bernard Maclnnis, Administrator of the Estate of Christopher Maclnnis (“Maclnnis”), against the defendants, Walsh Brothers, Inc. (“Walsh Bros.”), McNamara/Salvia, Inc. (“McNamara/Salvia”), Ocean Steel & Construction, Ltd. (“Ocean Steel”), and Infasco (“Infasco”). The plaintiffs claims arise out of an accident in which Maclnnis was fatally injured when a steel beam fell from the eighth floor and struck him while he was working on a construction project. The plaintiff asserts claims for negligence and/or recklessness resulting in wrongful death, pursuant to G.L.c. 229, §2, and for negligence and/or recklessness resulting in personal injury and conscious pain and suffering, pursuant to G.L.c. 229, §6 against McNamara/Salvia. McNamara/Salvia was hired by the architect of the construction project, Cambridge Seven Associates (“Cambridge Seven”), to design the structural steel elements necessary to complete the Yawkey Center for Outpatient Care at Massachusetts General Hospital. The matter is before this court on defendant McNamara/Salvia’s motion for summary judgment.
For the reasons set forth below, the defendant McNamara/Salvia’s motion for summary judgment is ALLOWED.
BACKGROUND
At this summary judgment stage, the facts are reported in the light most favorable to the non-moving pariy. Anderson Street Associates v. City of Boston, 442 Mass. 812, 816 (2004), citing Augat, Inc. v. Liberty Mut Ins. Co., 410 Mass. 117, 120 (1991).
Partners Healthcare Systems (“Partners”) retained Cambridge Seven to design the Yawkey Center for Outpatient Care at Massachusetts General Hospital. Cambridge Seven retained McNamara/Salvia to design the structural steel elements necessary to complete the project. Maclnnis was an employee of Boston Steel and Precast Erector, Inc. (“Boston Steel”), the steel erector on the project. Maclnnis was killed on March 5, 2003, during the erection of the structural steel elements. A steel beam fell from the eighth floor onto Maclnnis.
A citation issued by the Occupational Safely and Health Administration (“OSHA”)[3] indicated that two employees “were using a hand powered chain hoist to level the truss girder when the steel to which the hoist • was attached collapsed.” The citation also indicated that the “hook was attached to the load without the use of a sling or other acceptable method of attachment,” and that “an insufficient number of bolts were installed on the truss girders.” Further, the citation stated that Boston Steel agreed that it did not furnish employment and a place of employment which were free from recognized hazards that were causing or likely to cause death or serious physical harm to employees in that employees were exposed to crushing hazards from falling structural steel which did not have a load rating at least equal to that of the hoist being used. Employees were also exposed to “struckby” hazards from shifting or unstable rigging according to the OSHA citation.
The plaintiffs claims for wrongful death and conscious pain and suffering against McNamara/Salvia are predicated on an allegation of negligence. The language of the contract between Cambridge Seven and-McNamara/Salvia includes the following:
It is expressly understood and agreed, notwithstanding any reference to any rule or regulation, that McNamara/Salvia has no responsibiliiy or duty for guaranteeing, warranting, directing or superintending the contractors’ work methods, safely of the job site, process, failure to carry out the work in accordance with contract requirements, timeliness in performance of the work, or any other aspect of construction for which the contractors have responsibility.
The language of the contract between Walsh and the project owner, Partners, includes, the following:
[Walsh] shall be solely responsible for and have control over construction means, methods, techniques, sequence and procedures, including without limiting the generality of the foregoing, all safety precautions and programs, and for coordination of all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters.
Boston Steel, the steel erector for the project, agreed in its subcontract with Walsh to be responsible for “the safe performance of all aspects of the Work . .-.”
DISCUSSION
Summary Judgment Standard
Summary judgment is appropriate where the “pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving parly is entitled to judgment as a matter of law." Highland Ins. Co. v. *636 Aerovox, Inc., 424 Mass. 226, 232 (1997), citing Mass.R-Civ.P. 56(c). In a case such as this, where the opposing party will have the burden of proof at trial, the moving party is entitled to summary judgment if it can demonstrate by reference to these materials, “unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Analysis
McNamara/Salvia moves for summary judgment based on its argument that it owed no duty to protect Maclnnis, and accordingly cannot be liable for the claims for wrongful death and personal injury and conscious pain and suffering sounding in negligence. Claims based on allegedly negligent conduct can not succeed where the defendant did not owe a legal duty to the injured party. Fisher v. M Spinelli & Sons Co., Inc., 9 Mass. L. Rptr. 638, 1999 WL165674, * 3 (Mass.Super.) (Kottmyer, J.), citing Lyons v. Morphew, 424 Mass. 828, 833 (1997). “The existence of a duty of care is a question of law.” Id. In determining the duties imposed upon architects, engineers, and other design professionals with regard to the safety of workers on a construction project, “courts look to the agreement between the design professional and the owner, as well as to other contract documents.” Fisher, 1999 WL 165674, * 3, citing Parent v. Stone & Webster Eng. Corp., 408 Mass. 108, 113 (1990).
In Fisher, the moving party was an architectural firm, SGH, that was hired to prepare contract documents for the repair and waterproofing of a property in Boston. Id. at *1. The project owner hired a general contractor, Spinelli, who subcontracted portions of the repair work. Id. The agreement between the owner and architect, as well as Spinelli’s contract documents indicated the responsibilities imposed upon SGH, such as conducting surveys and inspecting the property and work on the project. Id. The documents stated that SGH was not responsible for the means and methods of construction, safety precautions, and that Spinelli had sole responsibility for the acts or omissions of the contractor, subcontractors, or their agents and employees. Id. The documents imposed all liability “arising from the employment of any construction means, methods, techniques, sequences, or procedures” upon Spinelli. Id. at *2.
The court granted summary judgment for SGH, concluding that “(t]he contract documents placed sole responsibility for worker safety on Spinelli.” Id. at *3. The court reasoned that SGH had no contractual relationship with the injured party, the general contractor, or the subcontractor, and cited the proposition followed in the majority of jurisdictions stating that “a design professional on a construction project who has no privity with a contractor or subcontractor is not responsible for the safety of construction workers at the work site, absent additional elements not present in this case." Id. No such evidence of any of the additional elements was adduced. Id.
In this case, the opposition motions of the plaintiff, Walsh, and Ocean Steel argue that crucial information has not been obtained through the discovery process as of yet, and assert that the motion should be denied based on the principles of Mass.R.Civ.P. 56(f). Further, the plaintiff cites various cases in which courts in other jurisdictions have held that liability for negligence could be imposed upon an architect of a construction project. In particular, the plaintiff argues that, based on the OSHA report, there were special erection conditions here, which, under the State Building Code and incorporated provisions of the American Institute of Steel Construction (AISC) Code, required that McNamara/Salvia include those conditions in its contract plans and specifications.
Mass.R.Civ.P. 56(f) states:
Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present, by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had.
Mass.R.Civ.P. 56(f) (emphasis added).
Neither Walsh nor Ocean Steel have submitted any affidavits in opposition to McNamara/Salvia’s motion, although their oppositions are based, in whole or in part, on Rule 56(f). Maclnnis does submit the affidavit of counsel in support of his opposition based on Rule 56(f), but the affidavit does not state what facts are needed to interpret the contract documents or the State Building Code, including any provision containing requirements of the AISC Code.
The contracts between the architect and McNamara/Salvia (design structural engineer) and between the general contractor and the steel erector, Boston Steel, make it clear that McNamara/Salvia owed no duty of care to any worker on the site, including the plaintiff. The language of the various agreements are almost identical to those in Fisher. None of the cases cited by Maclnnis contain the type of contractual provisions present in this case, which explicitly define the duties of McNamara/Salvia. While these cases lend support to a general argument that an architect can be held liable for damages proximatety caused by its negligence in performing services, the agreement between McNamara/Salvia and the architect, as well as the other contract documents are determinative as to the duties imposed upon the parties. See Fisher, 1999 WL 165674, *3, citing Parent, 408 Mass. at 113.
Maclnnis also relies on Chapter 22 of the Massachusetts State Building Code, which addresses the design and construction of structural steel, including *637 a specific section requiring that all structural steel be designed and constructed in accordance with the American Institute of Steel Construction (“AISC”) Specification for Structural Steel Buildings-Allowable Stress Design and Plastic Design (“AISC ASD”) or the AISC Load and Resistance Factor Design Specification for Structural Steel Buildings (“AISC LRFD”). 780 CMR 2203.1. Maclnnis attaches to his opposition something called the “Code of Standard Practice for Steel Buildings and Bridges (’AISC Code’),” not the AISC design specifications referred to in 780 CMR 2203.1. Maclnnis then argues that the AISC Code could potentially impose responsibility on the engineer for “Special Erection Conditions.” The Code states that “(w]hen the design concept of a structure is dependent upon use of shores, jacks or loads which must be adjusted as erection progresses to set or maintain camber or prestress, such requirement is specifically stated in the contract documents.” AISC Code 7.9.4.
The section of the State Building Code governing structural steel, 780 CMR 2203.0 et seq., appears nowhere to refer to the AISC Code. Furthermore, the AISC Code has nothing to do with design of the structural steel, which is what McNamara/Salvia was hired to do. The AISC Code covers “commonly accepted standards of the structural steel fabricating industry. In the absence of other instructions in the contract documents, the trade practices defined in the [AISC Code]... govern the fabrication and erection of structural steel.” AISC Code 1.1. The “contract documents” “define the responsibilities of the parties involved in bidding, purchasing, supplying and erecting structural steel.” Id. In short, they cover the relative responsibilities of the supplier and the erector of the structural steel. If the owner wishes to retain control over the erection, which it clearly did not in this case, or if certain members cannot be erected “in théir normal sequence (emphasis added),” of which there is no claim or evidence, then the owner so specifies in the contract documents which, again, will define the responsibilities of the erector.
Even if the State Building Code included the AISC and even if the AISC Code covered the designer of structural steel, the AISC Code has nothing to do with this situation. The AISC Code defines Special Erection Conditions. Those conditions arise when the design depends on the use of “shores, jacks or loads” that must be “adjusted as erection progresses to set or maintain camber . . .” AISC Code 7.9.4. Under such conditions, this requirement should be specifically stated in the contract documents, that is, again defining the responsibilities of the erector, not the designer, under these conditions. There is no claim or inference that “shores, jacks or loads” had to be adjusted as this steel was being put in place nor that such adjustment was required to “set or maintain camber.” The plaintiffs attorney’s affidavit indicates that the cause of Maclnnis’s death was the failure of a connection between a cantilevered platform and a support column; the OSHA citation refers to a hook being improperly attached to the load and that there were not a sufficient number of bolts installed on the truss girders.
The Informal Settlement Agreement between OSHA and Boston Steel (not McNamara/Salvia) requires Boston Steel to work with local steel safety authorities toward the development and implementation of a policy to make it mandatory that special erector conditions be specifically stated in contract documents. This agreement makes no reference to the AISC Code and, indeed, refers to something called the Steel Fabrication Institute as the entity that Boston Steel is to work with. There is nothing in this document to indicate that there is any basis for finding a duty by McNamara/Salvia to Maclnnis. So even if Maclnnis had submitted a proper Rule 56(f) affidavit, there are no facts to demonstrate that additional discovery would serve any purpose. See Fisher, 1999 WL 165674, *5, citing Comm. v. Fall River Motor Sales, Inc., 409 Mass. 302, 309 (1991). As a matter of law, there is no basis to find a duty by McNamara/Salvia to Maclnnis.
ORDER
For the foregoing reasons, it is hereby ORDERED that the motion for summary judgment of McNamara/Salvia is ALLOWED.

 MacInnis attached this document to the Plaintiffs Rule 56(f) Response to Defendant, McNamara/Salvia Inc.’s Motion for Summary Judgment. McNamara/Salvia does not rely on it to support its motion.